UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

MICHAEL DWECK,                      :

                    Plaintiff,      :      10 Civ. 2577  (RMB)(HBP)

     -against-                      :      REPORT AND
                                           RECOMMENDATION
DIANA AMADI and MALIBU DENIM CO.,   :

                    Defendants.     :

-----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE RICHARD M. BERMAN, United States

District Judge,


I.   Introduction


          On January 25, 2011, the Honorable Richard M. Berman,

United States District Judge for the Southern District of New

York, referred this matter to me to conduct an inquest concerning

plaintiff's damages and attorney's fees in connection with his

claims against defendants Diana Amadi and Malibu Denim Company.

The inquest was ordered as a result of Judge Berman's Order dated

January 25, 2011 noting defendants' default.

          Pursuant to the Order of Reference, I issued a Schedul-

ing Order on February 7, 2011 directing plaintiff to serve and

file proposed findings of fact and conclusions of law, along with

evidentiary materials supporting his claim for damages, by April 7, 2011.  My February 7, 2011 Scheduling Order further directed defendants to submit responsive materials by May 9, 2011. Specifically, my Order provided:

> Defendants shall submit their response to Plaintiff's submission, if any, no later than May 9, 2011. IF DEFENDANTS (1) FAIL TO RESPOND TO PLAINTIFF'S SUBMISSIONS, OR (2) FAIL TO CONTACT MY CHAMBERS BY MAY 9, 2011 AND REQUEST AN IN-COURT HEARING, IT IS MY INTENTION TO ISSUE A REPORT AND RECOMMENDATION CONCERNING DAMAGES ON THE BASIS OF PLAINTIFF'S WRITTEN SUBMISSIONS ALONE WITHOUT AN IN-COURT HEARING.  See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997); Fustok v. ContiCommodity Services Inc., 873 F.2d 38, 40 (2d Cir. 1989) ("[I]t [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment.").

(Docket Item 29 at 1-2) (emphasis in original).

On or about April 7, 2011, plaintiff filed Proposed Findings of Fact and Conclusions of Law along with supporting affidavits (Docket Items 30-33).

Copies of my February 7, 2011 Scheduling Order were sent to defendants at the following addresses:

Ms. Diana Amadi
P.O. Box 8147
Calabasas, California  91372

Ms. Diana Amadi
6203 Variel Avenue
Los Angeles, California  90025

2

        Malibu Denim
        23777 Mulholland Highway SPC #140
        Calabasas, California   91302-2716

        Malibu Denim
        P.O. Box 8147
        Calabasas, California   91302

        Malibu Denim
        6203 Variel Avenue
        Los Angeles, California   90025

        Malibu Denim
        1530 Camden Avenue, PH 2
        Los Angeles, California   90025-8016

None of the copies have been returned to me.  Nevertheless, defendants have not made any written submission to me, nor have they contacted my chambers in any way.

Accordingly, on the basis of the complaint and the affidavits previously submitted by plaintiff and his counsel, I respectfully recommend that the Court make the following findings of fact and conclusions of law and award plaintiff $100,000.00 in statutory damages and $450.00 in attorney's fees and costs.

II.   <u>Findings of Fact</u>

    A.   <u>The Parties</u>

      1.  Plaintiff Michael Dweck, a New York resident, is a professional art photographer whose work has appeared in publications such as Vogue, GQ, Vanity Fair, and Esquire.  Plaintiff's

work has been exhibited in galleries around the world (Complaint ("Compl.")[1] ¶¶ 2, 8; Declaration of Edward C. Greenberg, Esq., dated March 30, 2011 ("Greenberg Decl.") ¶ 7).

2. Defendant Diana Amadi is the "principal of, owner, and driving force behind Malibu Denim Company." She is a resident of California, residing at 1530 Camden Avenue, PH2, Los Angeles, CA 90025-8016 (Compl. ¶¶ 3, 9).

3. Defendant Malibu Denim Company is "an unincorporated business entity maintaining its principle [sic] place of business at 1530 Camden Avenue, PH2, Los Angeles, CA 90025-8016." The company produces jeans for retail sale throughout the United States, including New York. The jeans can also be purchased through the Internet (Compl. ¶¶ 4, 16).

---

[1] As a result of defendants' default, all the allegations of the Complaint, except as to the amount of damages, must be taken as true. Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 70 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973); Robinson v. Sanctuary Record Groups, Ltd., 542 F. Supp. 2d 284, 289 (S.D.N.Y. 2008) (Marrero, D.J.); Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995); Deshmukh v. Cook, 630 F. Supp. 956, 959 (S.D.N.Y. 1986) (Conner, D.J.).

B.   Plaintiff's
     Copyrighted Work

4.   The copyrighted work at issue in this litigation is a photographic image entitled "Sonya, Poles, Montauk, NY 2002" ("The Image"). The Image depicts a young, naked woman holding a surfboard and running down a beach.  The Image appears on the cover of plaintiff's book, The End:  Montauk N.Y. (Compl. ¶ 11).

5.   The United States Copyright Office issued Copyright Registration No. TX0006433027 to plaintiff on June 1, 2006 for The End:  Montauk, N.Y., which includes The Image (Compl. ¶ 12).

6.   Single prints of The Image have sold for prices ranging from $2,000 to $22,000.  In June 2009, one print sold for $17,000 at Christie's Fine Art Auction House.  Plaintiff has sold 62 prints of The Image in total (Compl. ¶¶ 14, 15).

7.   The Image has been featured in magazines such as Vogue, GQ, Vanity Fair, and Esquire, and has been exhibited in various galleries around the world, including the Louvre Museum in Paris, France (Affidavit of Michael Dweck, dated March 30, 2011 ("Dweck Aff.") ¶ 7).

8.   Plaintiff's book, The End:  Montauk, N.Y., has had gross sales of over $550,000, with 7,500 copies having been sold (Dweck. Aff. ¶ 6).

5

C.  Defendant's Infringement

9.  Defendants' offending use of The Image commenced in or around 2009 (Compl. ¶ 18).

10.  Defendants used The Image without the plaintiff's authorization, license, or consent (Compl. ¶ 27).

11.  Defendants employed The Image in the advertising, promotion, and sale of their jeans.  The infringement included the use of The Image on a hang tag that was attached to each garment (Compl. ¶ 17 and Ex. D thereto).

12.  Plaintiff requested from defendants an accounting of the offending uses of The Image, which defendants did not provide (Compl. ¶ 25).

13.  Defendants were aware of the Complaint and directly addressed its claims in several e-mails with plaintiff made prior to the filing of this action (Plaintiff's Proposed Findings of Fact and Conclusions of Law, dated April 7, 2011 ("Pl's Proposed Findings") ¶ 8; Greenberg Decl. ¶ 9 and Exhibit D thereto).

14.  Defendants use of the images was willful, intentional, and in bad faith.  The offending use continued unabated through the filing of the Complaint on March 17, 2010, despite actual notice from plaintiff (Compl. ¶ 29).

D.   <u>Plaintiff's Damages</u>

15.   Defendants use of The Image diminished its value in the fine art market and created the risk of alienating plaintiff's customer base.  The defendants' use also has the effect of devaluing all of plaintiff's art work (Compl. ¶ 19).

16.   Due to defendant's failure to appear, plaintiff cannot conduct discovery, and is thus unable to ascertain defendants' actual financial benefit from the use of The Image (Pl's Proposed Findings ¶ 11).

E.   Plaintiff's
<u>Attorney's Fees</u>

17.   Plaintiff has been represented throughout this action by the firm of Edward C. Greenberg, PC on a modified contingency basis (Greenberg Decl. ¶ 33 and Ex. H thereto).

18.   Plaintiff's counsel estimates that no less than $20,000 has been spent on the matter thus far (Greenberg Decl. ¶ 33).

19.   Plaintiff's counsel requests attorney's fees "in the amount of $60,000 (40% of the maximum statutory award)" (Greenberg Decl. ¶ 35).

III.  <u>Conclusions of Law</u>

    A.  <u>Jurisdiction and Venue</u>

       20.  This action arises under the Copyright Laws of the United States.  The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338.

       21.  The court has long-arm jurisdiction over defendants to New York Civ. Prac. Law & Rules § 302 because defendants regularly supplied goods into New York and violated plaintiff's exclusive right under 17 U.S.C. § 106(3) to distribute copies of The Image in New York.

       22.  Venue is proper in this District because defendants are subject to jurisdiction in this District.  28 U.S.C. § 1391(b)-(c).  Venue is also proper in this District because defendants' distribution of the unauthorized copies of The Image in New York State and this District constitutes a substantial part of the events giving rise to the claims set forth in the complaint.

       23.  Because plaintiff owns the federal registration covering The Image, he has standing to bring this action.  17 U.S.C. § 411(a).

B.  Defendants' Infringement
    and Plaintiff's Damages

     24.  As the owner of the copyright identified in

paragraph 5, plaintiff holds the exclusive right to duplicate the

images covered by that copyright, including The Image.  17 U.S.C.

§ 106(1).

     25.  Defendants' unauthorized duplication of The Image

infringed plaintiff's exclusive rights and renders defendants

liable for either plaintiff's damages, defendants' profits or

statutory damages.  17 U.S.C. §§ 501, 504(a).  Plaintiff has

elected to seek statutory damages (Pl's Proposed Findings ¶¶ 16-

17).

     26.  Title 17, United States Code, Section 504 pro-

vides, in pertinent part:

        (c) Statutory Damages.--

           (1) Except as provided by clause (2) of this
        subsection, the copyright owner may elect, at any time
        before judgment is rendered, to recover, instead of
        actual damages and profits, an award of statutory
        damages for all infringements involved in the action,
        with respect to any one work, for which any one in-
        fringer is liable individually, or for which any two or
        more infringers are liable jointly and severally, in a
        sum of not less than $750 or more than $30,000 as the
        court considers just.  For the purposes of this subsec-
        tion, all the parts of a compilation or derivative work
        constitute one work.

           (2) In a case where the copyright owner sustains
        the burden of proving, and the court finds, that in-

fringement was committed willfully, the court in its
discretion may increase the award of statutory damages
to a sum of not more than $150,000.  In a case where
the infringer sustains the burden of proving, and the
court finds, that such infringer was not aware and had
no reason to believe that his or her acts constituted
an infringement of copyright, the court in its discre-
tion may reduced the award of statutory damages to a
sum of not less than $200 . . . .

27.  The Court has broad discretion, within the statu-
tory limits, in awarding statutory damages.  Fitzgerald Publ'g
Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1116 (2d Cir. 1986); NFL
v. PrimeTime 24 Joint Venture, 131 F. Supp. 2d 458, 472 (S.D.N.Y.
2001) (Peck, M.J.).

28.  In awarding statutory damages, the Court is
required to consider various factors, including the expenses
saved and profits reaped by the defendant, the revenues lost by
the plaintiff, the value of the copyright, the deterrent effect
of the award on other potential infringers, and factors relating
to individual culpability.  Fitzgerald Publ'g Co. v. Baylor
Publ'g Co., supra, 807 F.2d at 1117; Getaped.com, Inc. v. Cang-
emi, 188 F. Supp. 2d 398, 403 (S.D.N.Y. 2002) (Hellerstein,
D.J.); Guess?, Inc. v. Gold Ctr. Jewelry, 997 F. Supp. 409, 411
(S.D.N.Y. 1998) (Kaplan, D.J.); Schwartz-Liebman Textiles v. Last
Exit Corp., 815 F. Supp. 106, 108 (S.D.N.Y. 1992) (Mukasey,
D.J.).

10

29.   Where, as here, the defendant has defaulted, the complaint's allegations of willfulness can be taken as true. Pitbull Prods., Inc. v. Universal Netmedia, Inc., 07 Civ. 1784 (RMB)(GWG), 2007 WL 3287368 at *3 (S.D.N.Y. Nov. 7, 2007) (Report & Recommendation) (Gorenstein, M.J.); Jett v. Ficara, 04 Civ. 9466 (RMB)(HBP), 2007 WL 2197834 at *7 (S.D.N.Y. July 31, 2007) (Report & Recommendation) (Pitman, M.J.); Malletier v. Whenu.Com, Inc., 05 Civ. 1325 (LAK), 2007 WL 257717 at *4 (S.D.N.Y. Jan. 26, 2007) (Kaplan, D.J.); Kenneth J. Lane, Inc. v. Heavenly Apparel, Inc., 03 Civ. 2132 (GBD)(KNF), 2006 WL 728407 at *6 (S.D.N.Y. Mar. 21, 2006) (Daniels, D.J.); Peer Int'l Corp. v. Max Music & Entm't, Inc., 03 Civ. 0996 (KMW)(DF), 2004 WL 1542253 at *3 (S.D.N.Y. July 9, 2004) (Report & Recommendation) (Freeman, M.J.); Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) (Marrero, D.J.); Fallaci v. New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983) (Sand, D.J.).

30.   Moreover, willfulness is established by the fact that The Image itself was copied and used on the hang tags of the garments.  "To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights."  Island Software & Computer

11

Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 263 (2d Cir. 2005);
Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 112 (2d Cir.
2001) ("Willfulness in this context means that the defendant
recklessly disregarded the possibility that its conduct repre-
sented infringement.") (inner quotations and citations omitted);
Engel v. Wild Oats, Inc., 644 F.Supp. 1089, 1092 (S.D.N.Y. 1986)
(Carter, D.J.) (willful infringement where defendant used photo-
graph from copyrighted book in the manufacture of t-shirts and
sweat shirts).

    31.  The fact that The Image itself -- not one that is
similar to it or arguably inspired by it -- is depicted on the
hang tags of the jeans is compelling evidence that defendants
deliberately copied plaintiff's work.  There is no accidental or
innocent explanation for the presence of The Image on the hang
tags.  In fact, several photographs attached to an e-mail from
defendants to plaintiff bear an unmistakable similarity to Mr.
Dweck's famous photograph, demonstrating that defendants at-
tempted to replicate The Image using their own models before
resorting to simply copying it (Ex. D, Greenberg Decl.).

    32.  Plaintiff seeks an award of the maximum statutory
damages allowed, $150,000 (Pl's Proposed Findings ¶ 41).

    33.  I have concluded that plaintiff is entitled to an
award of statutory damages of $100,000.  Defendants acted wil-

12

fully here, which demonstrates that an award at the higher end of
the range of permissible damages is appropriate. Defendants also
derived commercial benefit from The Image, using it to attract
potential purchasers of their products. An undated e-mail
correspondence indicates that "[t]otal revenue since [Malibu
Denim's] launch has been around [€]200,000," or approximately
$285,000 (Ex. F, Greenberg Decl.). Finally, it must be noted
that "[t]he nature of plaintiff's copyright -- ownership of a
rarefied, artistic subject matter -- is unusually susceptible to
damage when reproduced on the rather less rarefied medium."
Engel v. Wild Oats, Inc., supra, 644 F. Supp. at 1092. Here, the
widespread reproduction of plaintiff's artistic Image on the
medium of a garment hang tag undoubtedly tarnished its artistic
value.

     34. On the other hand, although there can be very
little doubt that the hang tag featuring The Image improved the
marketability of the jeans, it was not the only factor responsi-
ble for their sales. More likely, the hang tag was of incidental
significance compared to other factors, primarily the qualities
of the jeans themselves. Although the hang tag contributed to
the marketing of defendants' jeans, it is unlikely that any
consumers purchased defendants' jeans solely on the basis of the

hang tag.  This suggests that something less than the maximum permissible amount of statutory damages is appropriate.

35.  Accordingly, I conclude that $100,000.00 is sufficient to compensate plaintiff for any damage he suffered, to strip defendants of their ill-gotten gains and to deter similar infringements in the future.

C. Pre-judgment Interest

36.  Plaintiff also seeks "9% interest, compounded annually from the date of the filing of the action" (Greenberg Decl. ¶ 25).

37.  "[T]he Copyright Act neither authorizes nor forbids prejudgment interest on an award of statutory damages. The Second Circuit has not yet spoken on this issue." Barclays Capital Inc. v. Theflyonthewall.com, 700 F. Supp. 2d 310, 329 (S.D.N.Y. 2010) (Cote, D.J.) rev'd on other grounds, 10-1372-CV, 2011 WL 2437554 (2d Cir. June 20, 2011).  Other Courts of Appeals in other Circuits and courts in this District have concluded that prejudgment interest may be awarded, in the court's discretion, on statutory damages under the Copyright Act.  Barclays Capital Inc. v. Theflyonthewall.com, supra, 700 F. Supp. 2d at 329 (listing authority); see also TVT Records v. Island Def Jam Music

Group, 279 F. Supp. 2d 366, 409 (S.D.N.Y. 2003) (Stanton, D.J.),
rev'd on other grounds, 412 F.3d 82 (2d Cir. 2005).

   38.  I conclude that prejudgment interest should be
awarded from the date of the filing of the action, March 22,
2010, to the entry of judgment.  "[T]he rate of interest used in
awarding prejudgment interest rests firmly within the sound
discretion of the trial court."  Ingersoll Mill. Mach. Co. v. M/V
Bodena, 829 F.2d 293, 311 (2d Cir. 1987) (emphasis in original).
Although "[t]here is no federal statutory rate for prejudgment
interest," several courts have chosen to adopt the rate contained
in 28 U.S.C. § 1961, which is used in calculating postjudgment
interest.  Softel, Inc. v. Dragon Med. & Scientific Communica-
tions Ltd., 891 F. Supp. 935, 944 (S.D.N.Y. 1995) (Cederbaum,
D.J.), order aff'd and remanded sub nom., 118 F.3d 955 (2d Cir.
1997); see also Fendi Adele S.R.L. v. Burlington Coat Factory
Warehouse Corp., 689 F. Supp. 2d 585, 618 n.11 (S.D.N.Y. 2010)
(Sand, D.J.) (listing authority).  Consequently, plaintiff's
specific request for "9% interest, compounded annually," which is
likely predicated upon New York State law, should be denied.
Plaintiff should instead receive prejudgement interest "at a rate
equal to the weekly average 1-year constant maturity Treasury
yield . . . for the calendar week preceding the date of the

judgment."  28 U.S.C. § 1961.

    D.  <u>Attorney's Fees</u>

       39.  Plaintiff also seeks an award of the attorney's fees and costs incurred in bringing this action (Compl. ¶ 32).

       40.  Section 505 of the Copyright Act allows the prevailing party to recover full costs and grants the Court discretion to award reasonable attorney's fees.  17 U.S.C. § 505; <u>see</u> <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517, 533 (1994) (identifying several non-exclusive factors relevant to an award of attorney's fees including "frivolousness, motivation, objective unreasonableness and the need in particular circumstances to advance considerations of compensation and deterrence"); <u>Kepner-Tregoe, Inc. v. Vroom</u>, 186 F.3d 283, 289 (2d Cir. 1999) (the award of attorney's fees "is also justified based on the court's finding of willfulness"); <u>Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.</u>, 996 F.2d 1366, 1383 (2d Cir. 1993) ("the prevailing party in a copyright action is ordinarily entitled to fees at the trial level").

       41.  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v.</u>

County of Albany, 522 F.3d 182, 186 (2d Cir. 2008), quoting
Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  This figure was
previously referred to as the "lodestar," but in Arbor Hill the
Second Circuit abandoned the use of this metaphor as unhelpful.
Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of
Albany, supra, 522 F.3d at 190; see also Green v. Torres, 361
F.3d 96, 98 (2d Cir. 2004) (per curiam) ("'[T]he starting point
for the determination of a reasonable fee is the calculation of
the lodestar amount.'"), quoting Quarantino v. Tiffany & Co., 166
F.3d 427, 425 (2d Cir. 1999); Hnot v. Willis Group Holdings Ltd.,
01 Civ. 6558 (GEL), 2008 WL 1166309 at *1 (S.D.N.Y. Apr. 7, 2008)
(Lynch, D.J.).

          42.   The hourly rates used in making a fee award should
be "what a reasonable, paying client would be willing to pay."
Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of
Albany, supra, 522 F.3d at 184.  This rate should be "in line
with those [rates] prevailing in the community for similar
services by lawyers of reasonably comparable skill, experience
and reputation."  Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984);
accord Reiter v. MTA New York City Tran. Auth., 457 F.3d 224, 232
(2d Cir. 2006).  In determining what a reasonable hourly rate is,
the court should not only consider the rates approved in other
cases in the District, but should also consider any evidence

17

offered by the parties.  Farbotko v. Clinton Co., 433 F.3d 204,

208-09 (2d Cir. 2005).  The Court is also free to rely on its own

familiarity with prevailing rates in the District.  A.R. ex rel.

R.V. v. New York City Dep't of Educ., 407 F.3d 65, 82 (2d Cir.

2005); Miele v. New York State Teamsters Conf. Pension & Ret.

Fund, 831 F.2d 407, 409 (2d Cir. 1987).  Finally, the Second

Circuit has also identified the following factors that a court

should consider in determining what a reasonable client would be

willing to pay:

> the complexity and difficulty of the case, the avail-
> able expertise and capacity of the client's other
> counsel (if any), the resources required to prosecute
> the case effectively (taking account of the resources
> being marshaled on the other side but not endorsing
> scorched earth tactics), the timing demands of the
> case, whether an attorney might have an interest (inde-
> pendent of that of his client) in achieving the ends of
> the litigation or might initiate the representation
> himself, whether an attorney might have initially acted
> pro bono (such that a client might be aware that the
> attorney expected low or non-existent remuneration),
> and other returns (such as reputation, etc.) that an
> attorney might expect from the representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of

Albany, supra, 522 F.3d at 184.  In all cases, "the fee applicant

has the burden of showing by 'satisfactory evidence -- in addi-

tion to the attorney's own affidavits' -- that the requested

hourly rates are the prevailing market rates."  Farbotko v.

18

Clinton Co., supra, 433 F.3d at 209, quoting Blum v. Stevenson,
supra, 465 U.S. at 896 n.11.

      43. Plaintiff's counsel has provided contemporaneous
time sheets, which "reflect most, but not all of the time spent
on [the] case" (Greenberg Decl. ¶ 33). The time sheets show that
the matter was handled by Tamara Lannin ($250.00/hr), Richard
Walker ($250.00/hr), and "LwClk" ($65.00/hr), who collectively
performed 48.31 hours of work totaling $10,992 (Ex. I, Greenberg
Decl.). According to plaintiff's counsel, "[not] all of the
hours worked were recorded because this is a contingency case,"
and the actual attorney's fees are "believed to be no less than
$20,000" (Greenberg Dec. ¶ 33.). Nevertheless, plaintiff's
counsel requests "attorneys' fees in the amount of $60,000 (40%
of the maximum statutory award)" (Greenberg Decl. 35). Assuming
that the hours indicated on the contemporaneous time sheets are
an accurate reflection of the time spent on the case, this works
out to a rate of approximately $1241.98/hr.

      44. Despite the considerable fees requested, plain-
tiff's counsel has provided no information about the experience
or expertise of the attorneys involved in the matter or the
prevailing market rates for the type of work performed. Thus,
plaintiff's counsel has failed to submit "satisfactory evidence"
in support of the requested fees, making it impossible to deter-

mine whether a reasonable, paying client would be willing to retain their services at the rates they seek. For this reason, I am denying plaintiff's request for attorney's fees without prejudice to renewal. Because plaintiff's counsel has failed to demonstrate that their hourly rate was reasonable, it is not necessary to determine whether they expended a reasonable number of hours on the matter.

E. Costs and Disbursements

45. Plaintiff's counsel also seeks costs and disbursements in the total amount of $650.00. This figure is the sum of the fee to file this action ($350.00) the cost of sending the summons and complaint ($100.00), and the "Statutory Fee" pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") § 8201(1) ($200.00). I conclude that the filing fee ($350.00) and the cost of sending the summons and complaint ($100.00) are reasonable and are recoverable. Duke v. County of Nassau, No. 97-CV-1495 (JS), 2003 WL 23315463 at *6 (E.D.N.Y. Apr. 14, 2003) ("Courts have continuously recognized the right for reimbursement of costs such as photocopying, postage, [and] transportation"). The "Statutory Fee" of $200.00 pursuant to New York C.P.L.R. § 8201(1), however, is not recoverable. See 1st Bridge LLC v. 682 Jamaica Ave., LLC, 08-CV-3401 (NGG)(MDG), 2010 WL 4608326 at *6 (E.D.N.Y. July 13,

2010) (Report & Recommendation) (Go, M.J.) ("[S]ince the statu-
tory costs pursuant to the C.P.L.R. are not applicable to a case
brought in federal court, I recommend that they not be
awarded."). Thus, I recommend awarding plaintiff costs and
disbursements in the amount of $450.00.

    E.  <u>Injunctive Relief</u>

       46.  Finally, plaintiff seeks injunctive relief against
the continued infringement of The Image (Compl. at ¶ 44).

       47.  "To obtain a permanent injunction, [the plaintiff]
must demonstrate (1) actual success on the merits and (2) irrepa-
rable harm." <u>Gucci America, Inc. v. Duty Free Apparel, Ltd.</u>, 286
F. Supp. 2d 284, 290 (S.D.N.Y. 2003) (Marrero, J.).

       48.  Plaintiff has established success on the merits;
defendants' default constitutes an admission of liability.
<u>Pitbull Prods., Inc. v. Universal Netmedia, Inc.</u>, <u>supra</u>, 2007 WL
3287368 at *6; <u>Dunkin' Donuts, Inc. v. Peter Romanofsky, Inc.</u>,
No. CV-05-3200 (SJ)(JMA), 2006 WL 2433127 at *6 (E.D.N.Y. Aug. 8,
2006).

       49.  Plaintiff has also demonstrated irreparable harm.
"In a copyright action the existence of irreparable injury is
presumed upon a showing of a prima facie case of copyright
infringement." <u>Video Trip Corp. v. Lightning Video, Inc.</u>, 866

21

F.2d 50, 51-52 (2d Cir. 1989); see also Island Software & Computer Serv., Inc. v. Microsoft Corp., No. CV-01-750 (WDW), 2006 WL 1025915 at *2 (E.D.N.Y. Apr. 13, 2006) ("[W]hen a copyright plaintiff has established liability and a threat of continuing infringement, he is entitled to an injunction.").

      50.  Thus, I also recommend that defendants Diana Amadi and Malibu Jeans Company be permanently enjoined from any further infringements of The Image.

## IV.  Conclusion

      For all the foregoing reasons, I recommend that plaintiff recover against defendants Diana Amadi and Malibu Denim Co. statutory damages in the amount of $100,000.00, with prejudgment interest calculated from the date of the filing of the action, and costs and disbursements in the amount of $450.00.  I further recommend that plaintiff's request for attorney's fees be denied without prejudice to renewal.  Finally, I recommend that a permanent injunction be entered, enjoining Diana Amadi and Malibu Denim Co. from further infringement of The Image.

## V.  OBJECTIONS

      Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have

fourteen (14) days from receipt of this Report to file written objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Richard M. Berman, United States District Judge, 500 Pearl Street, Room 650, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Berman.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:  New York, New York
        July 26, 2011

                        Respectfully submitted,


                        HENRY PITMAN
                        United States Magistrate Judge

Copies mailed to:

Edward C. Greenberg, Esq.
Edward C. Greenberg P.C.
570 Lexington Avenue
17th Floor
New York, New York   10022

Ms. Diana Amadi
P.O. Box 8147
Calabasas, California   91372

Ms. Diana Amadi
6203 Variel Avenue
Los Angeles, California   90025

Malibu Denim
23777 Mulholland Highway SPC #140
Calabasas, California   91302-2716

Malibu Denim
P.O. Box 8147
Calabasas, California   91302

Malibu Denim
6203 Variel Avenue
Los Angeles, California   90025

Malibu Denim
1530 Camden Avenue, PH 2
Los Angeles, California   90025-8016